E. D. DeSHAZO ET AL. v. R. W. WEBB, COUNTY ATTORNEY.

No. 7337.   Decided February 23, 1938.
(113 S. W., 2d Series, 519.)

*C. F. Sentell* and *John E. Sentell*, both of Snyder, for appellants.

Articles 3069 and 3070, of the 1925 R. S., authorizing the contest of an election by any resident or residents, are valid statutes and are not unconstitutional as violative of Article V, Section 21, and Article IV, Section 22, of the Constitution, since they do not deprive county and district attorneys and the Attorney General of authority to represent the State. Maud v. Terrell, 109 Texas 97, 200 S. W. 377; Hooker v. Foster, 1 S. W. (2d) 276; Rister v. Plowman, 98 S. W. (2d) 264; McFarlane v. Westley, 186 S. W. 261.

*Stinson, Hair, Brooks & Duke,* of Abilene, for appellee.

MR. JUSTICE CRITZ delivered the opinion of the Court.

This case is before us on certified questions from the Court of Civil Appeals for the Eleventh District, at Eastland. The following facts are shown by the certificate and the record which accompanies it:

That proper proceedings were had to consolidate Hobbs Independent School District in Fisher County, Texas, and Camp Springs Common School District in Scurry County, Texas, the two districts being contiguous county-line districts; that pursuant to such proceedings an election was ordered and held in Camp Springs Common School District as part of the procedure required by law for such consolidation; that the result of such election was duly declared; and that, as shown by the declared result, 48 votes were cast in favor of consolidation and 46 votes against.

After the declaration of the result of the above election, and in due time, E. D. DeShazo, Martin Reep, and E. P. Simp-

son, the three trustees of the Camp Springs district, in their capacity as such, together with six other persons in the further capacity of resident citizens, property tax payers, and qualified voters of Scurry County, Texas, and Camp Springs Common School District of said county, brought this suit in the district court of Scurry County, Texas, against R. W. Webb, county attorney of such county, as contestee, to contest such election. As grounds for contesting the above election, the contestants, generally speaking, alleged facts which, if true, showed them entitled to have the declared result thereof set aside. In this regard the contestants' petition, in effect, charges that, if the election had been properly and lawfully conducted and all tendered legal votes allowed to vote, and all illegal votes rejected, the result would have been against consolidation. The prayer asks the court to go behind the declared result, to ascertain the true result, which is alleged to be against consolidation, and to so declare.

The county attorney of Scurry County, as contestee, filed general and special exceptions to the contestants' petition. The special exceptions, in effect, attacked the sufficiency of such petition on the ground that it showed on its face that the contestants, and each of them, were, and are, without lawful capacity to maintain this suit. Of course, the general exception, in effect, raises the same law question.

On the hearing in the district court the general and special exceptions filed by contestee were sustained, and the cause dismissed. On appeal by the contestants, the Court of Civil Appeals at Eastland, on original hearing, rendered an opinion and judgment remanding the cause to the district court with instructions to reinstate it. On motion for rehearing filed by contestee in the Court of Civil Appeals that court has certified to this Court the following questions of law:

"QUESTION No. 1: Is an election contest as purportedly authorized by R. S. 1925, Arts. 3069 and 3070, a civil *case* within the meaning of Constitution Art. 5, sec. 21, providing that 'county attorneys shall represent the State in all cases in the district and inferior courts in their respective counties' and/or a *suit* or *plea* within the meaning of Constitution Art. 4, sec. 22, providing that 'The Attorney General * * * shall represent the State in all suits and pleas in the Supreme Court of the State in which the state may be a party?'

"QUESTION No. 2. When under authority of law an election is a prerequisite step *or condition upon which a municipality*, or quasi-municipality may come into existence, or have in-

creased or diminished powers as such, is an action to contest such an election as provided in said Arts. 3069 and 3070 an attack upon such municipality or quasi-municipality within the meaning of the numerous decisions of the Supreme Court, well exemplified by the decision in the City of El Paso vs. Ruckman, 92 Tex. 86, to the effect that 'the validity of the incorporation can only be determined in a suit brought for that purpose in the name of the State, or by some individual under the authority of the State who has a special interest which is affected by the existence of the corporation'?

"QUESTION NO. 3: If, contrary to our view, the answers to questions Nos. 1 and 2 are not completely determinative of the question of the constitutionality of the said statutes, then are said statutes unconstitutional insofar as they purport to authorize a resident, or number of residents, to contest the character of election therein provided in an action to which the county attorney of a county or the district attorney of the district is required to be the contestee?"

The above questions are accompanied by copy of the opinion of the Court of Civil Appeals above mentioned, and the certificate is in all respects in conformity with the Rules of this Court and applicable statues.

Contestants contend that they have capacity to contest this election under Section 8 of Article 5 of our Constitution, as such constitutional provision is effectuated by Articles 3069 and 3070 of our 1925 Revised Civil Statutes. Before proceeding further, we deem it proper to quote the above constitutional statutory provisions.

Section 8 of Article 5 of our Constitution, so far as applicable here, reads as follows:

"The district court shall have original jurisdiction * * *, of contested elections, * * *."

Articles 3069 and 3070, R. C. S., supra, read as follows:

"Art. 3069. Other contested elections.—If the contest be for the validity of an election held for any other purpose than the election of an officer or officers in any county or part of a county, or precinct of a county, or in any incorporated city, town or village, any resident of such county, precinct, city, town or village, or any number of such residents, may contest such election in the district court of such county in the same manner and under the same rules, as far as applicable, as are prescribed in this

chapter for contesting the validity of an election for a county office."

"Art. 3070. Parties defendant.—In any case provided for in the preceding article, the county attorney of the county, or if there is no county attorney, the district attorney of the district, or the mayor of the city, town or village, or the officer who declared the official result of said election, or one of them, as the case may be, shall be made the contestee, and shall be served with notice and statement, and shall file his reply thereto as in the case of a contest for office; but in no case shall the costs of such contest be adjudged against such contestee, or against the county, city, town or village which they may represent, nor shall such contestee be required to give any bond upon an appeal."

As shown by the opinion of the Court of Appeals, which accompanies this certificate, the above articles of our present civil statutes were "respectively Articles 3077 and 3078, R. S. 1911; Articles 1804t and 1804u, R. S. 1895, and Articles 1752 and 1753, R. S. 1879. They have therefore purported to be the law for at least 58 years."

An examination of Section 8 of Article 5 of our Constitution as it existed prior to 1891 will disclose that it contained no express provision giving the district court jurisdiction of contested elections. Such jurisdiction, however, was expressly conferred by amendment adopted in that year. An examination of the decisions of this Court will disclose that, though the statutes above quoted were first enacted long prior to the adoption of the 1891 constitutional amendment just mentioned, it was uniformly held by this Court prior to such adoption that the district court was without jurisdiction, generally speaking, to try contested election cases. Jennett v. Owens, 63 Texas 261; Ex parte Towles, 48 Texas 413; Williamson v. Lane, 52 Texas 335; Ex parte Whitlow, 59 Texas 273. In spite of this rule, however, which existed prior to 1891, it was held by this Court that the district court did have jurisdiction to hear and determine a suit for the title and possession of an office. This holding was based upon the further holding that an office of profit is not only a franchise, but is property. In this connection, it was held that, if in a direct proceeding to recover an office it became necessary for the plaintiff to trace his right or title thereto through an election, the court had jurisdiction to go behind the returns and ascertain who was, in fact, lawfully elected. Jennett v. Owens, supra.

The holding that the district court did not have jurisdic-

tion to try contested election cases, not involving title to and possession of an office, prior to the adoption of the 1891 amendment to Section 8 of Article 5 of our Constitution was based on the holding that such article did not cover or apply to such cases. Generally speaking, it was held that "These decisions proceeded mainly upon the common ground that such a proceeding is not a suit, complaint or plea wherein the matter in controversy is valued at or amounts to $500 exclusive of interest." Jennett v. Owens, supra. As to the jurisdiction of district courts to hear election contests which did not involve the title and possession of an office prior to 1891, we quote further from the opinion in the Jennett Case:

"These were determined not to be suits or controversies between parties involving any particular amount or value. The judgment would not have determined, in favor of the one party as against the other, any matter of private right; but only a matter of public policy, which, without an express grant of authority by the Constitution vesting jurisdiction in the judiciary, belonged to the legislative branch of the government.

"The Constitution gives the Legislature the power to regulate the manner of removing county seats. It also requires the Legislature to enact laws for determining whether the sale of intoxicating liquors shall be prohibited within prescribed limits.

"It is part of the public policy of the State that county seats shall be located to best suit the convenience of the people of the county.

"It pertains to the police powers of the Legislature to have the sale of spirituous liquors prohibited in any locality where the people think it would subserve the interests of morality and good government that this should be done.

"When an election is held under the authority of the Legislature for either of these purposes, its indirect result may be to depreciate the value of the property of a private citizen by placing the county seat further from it, or to destroy a profitable business in the sale of ardent spirits. But every citizen holds his property subject to the constitutional right of the Legislature to enact laws of this kind. That it is depreciated in value by a change of county seat is a natural result contemplated by the organic law, and is but one of the sacrifices that the individual must suffer for the public good. That a trade which the Constitution contemplates may be so injurious to good morals and public order that the people may wish to suppress it in a particular locality is embarked in by a citizen gives him no right in it that can not be taken from

him for the better police regulation of the vicinity. The question, therefore, as to whether such an election was legally or illegally conducted, relates only to the convenience, morals or good order of the particular community. When determined, no more is decided than that the people voted to have their seat of justice at one place rather than another; or that spirituous liquors should or should not be sold within certain limits. This is not a judicial question over which a contest may be made in the district court. It is not a case between parties in which a judgment can be rendered in favor of one as against the other, such as the district courts have authority to enter up. The judgment would only amount to a declaration that the result of an election was different from what the authorities having it in charge had pronounced it to be. This might result incidentally in benefit or damage to some citizen, but it is not rendered upon that ground, or for the sake of restoring a right to the injured party; nor is it enforced by any process issued from the court where the judgment is pronounced."

Even after the adoption of the constitutional amendment of 1891 giving district courts jurisdiction to try "contested elections" actions it was held that such provision was not self-executing, because it, within itself, prescribes no rules or legal machinery by which such jurisdiction may be enforced. It was also held that "contested elections" cases were not civil suits or causes, and therefore could not be tried by the procedure provided in such cases. In other words, if the suit is simply to contest an election, and does not involve the title and possession of an office, it is still a proceeding legislative in its nature. Odell v. Wharton, 87 Texas 173, 27 S. W. 123.

It is not contended that Articles 3069 and 3070, supra, have not been properly reenacted since the adoption of the amendment of 1891, supra, conferring jurisdiction on our district courts to try "contested elections." Also, we think it can not be said that we now have no statute effectuating such amendment and prescribing rules by which the jurisdiction of the district courts may be exercised. In this regard, it will be noted that such statutes plainly provide who can bring the contest action, and who shall be made contestee. Also, such statutes make the rules, so far as applicable, that are prescribed for contesting the validity of elections for county offices govern contests covered by such statutes. A reference to the statutes governing election contests for county offices shows that they furnish proper procedural machinery for the conduct of such trials.

As said by the opinion of the Court of Civil Appeals in the case at bar, the Legislature has the power to enact any law that is not in conflict with the Constitution of this State or of the United States, or valid laws enacted by the latter. No contention is made by contestee that the above statutes involve any Federal question.

If we properly interpret his brief, contestee contends that to give the above statutes the construction that an election of this character can be contested thereunder would render them unconstitutional and void, because it would render them in violation of Section 21 of Article 5, and Section 22 of Article 4, of our Constitution.

Section 21 of Article 5, supra, so far as pertinent here, reads as follows:

"Section 21. * * * The county attorneys shall represent the State in all cases in the District and inferior courts in their respective counties; but if any county shall be included in a district in which there shall be a district attorney, the respective duties of district attorneys and county attorneys shall in such counties be regulated by the Legislature. * * *."

Section 22 of Article 4, supra, so far as pertinent here, reads as follows:

"Sec. 22. The Attorney General * * * shall represent the State in all suits and pleas in the Supreme Court of the State in which the State may be a party, * * *."

1 It is our opinion that Articles 3069 and 3070, supra, do not violate the above constitutional provisions. The jurisdiction conferred upon the district courts to hear and determine "contested elections" is legislative in its nature. We have already demonstrated this. In other words, we have already demonstrated that the power and jurisdiction to hear and determine a contested election action is the power and jurisdiction to exercise a legislative function, and that it is not a civil suit. Clearly, the "cases" referred to in Section 21 of Article 5, supra, and the "suits and pleas" referred to in Section 22 of Article 4, supra, have no reference to "contested elections," that is, to the legislative actions provided by Section 8 of Article 5, supra.

2 It is contended by contestee that Articles 3069 and 3070, supra, can not be applied to actions to contest elections to authorize the incorporation of school districts, because the incorporation of a school district embraces nothing more than

the creation of a governmental agency; to-wit, an agency for the conduct of public schools, and therefore the means by which it is undertaken to be accomplished are matters of general public concern, in which the individual citizen, even though he be a trustee of the district and a resident citizen, property tax payer, and qualified voter of such county and district, has no justiciable interest which is different from that of the general public. If a justiciable interest is required to enable the contestant to maintain this action, in the sense that such interest would be required to maintain an ordinary civil suit, then this contention must be sustained. When we consider, however, that this is not a civil suit, and that the statute confers the power or capacity on these contestants to maintain this legislative action, and when we are unable to put our finger on a single constitutional provision which prohibits the conferring of such power, we are compelled to overrule this contention. If this ruling is in conflict with the opinions in the cases of City of Goose Creek et al. v. Hunnicutt, 120 Texas 471, 39 S. W. (2d) 617, and City of Goose Creek et al. v. Hunnicutt, 118 Texas 326, 15 S. W. (2d) 227, we are constrained to overrule such cases so far as they conflict with this opinion. We think this opinion conflicts with no other case decided by this Court.

A reading of the two City of Goose Creek cases, supra, will disclose that the conclusions there reached were bottomed upon the assumption that mere "contested elections" actions, as are authorized to be tried by district courts under the provisions of Section 8 of Article 5 of our Constitution, supra, are civil suits,—that is, are "cases" within the meaning of Section 21 of Article 5, and "suits and pleas" within the meaning of Section 22 of Article 4, of our Constitution, supra. When it is held that this is not true, it must follow that the two City of Goose Creek opinions are erroneous. A further reading of these opinions will disclose that they cite in support of the conclusions therein reached the cases of Staples v. State, 112 Texas 61, 245 S. W. 639; Maud v. Terrell, 109 Texas 97, 200 S. W. 375; Allen v. Fisher, 118 Texas 38, 9 S. W. (2d) 731. An examination of such opinions will disclose that none of them were in point in the City of Goose Creek cases, for the reason that none of them deal with "contested elections" actions as defined by Section 8 of Article 5, supra.

The very purpose of the 1891 amendment to Section 8 of Article 5 of our Constitution was to aid in the preservation and enforcement of the purity of the conduct of elections. If this can not be done, then one of the very foundations of our

system of government may be seriously impaired. A constitutional provision which aids in accomplishing a purpose so important and so necessary should be liberally construed, to the end that it may, within reasonable bounds, accomplish the same. The capacity conferred by Articles 3069 and 3070 on certain parties to contest elections, other than for the purpose of electing officers, is not based on any individual property right; but upon the theory that a remedy should be furnished, legislative in its nature, whereby fraudulent elections may be contested, and the wrong thereby inflicted righted. Massey v. Studer, (Civ. App.) 11 S. W. (2d) 227.

This opinion is ordered certified to the Court of Civil Appeals as sufficiently answering the above quoted certified questions.

Opinion delivered February 23, 1938.