Hon. Lee P. BROWN, Mayor and the
City of Houston, Petitioners,

v.

Rob TODD, Respondent.

No. 00–0061.

Supreme Court of Texas.

Argued Oct. 2, 2000.

Decided June 21, 2001.

Rehearing Overruled Aug. 23, 2001.

Anthony W. Hall, Jr., City Attorney, Judy K. Hatfield, Assistant City Attorney, Kevin P. Parker, Lanier Parker & Sullivan, Houston, Allan E. Parker, Texas Justice Foundation, San Antonio, for petitioner.

Chief Justice PHILLIPS delivered the opinion of the Court, joined by Justice HECHT, Justice OWEN, Justice BAKER, Justice HANKINSON, Justice O'NEILL, and Justice JEFFERSON.

We must decide whether a citizen and a city council member have standing to challenge a mayor's authority to issue an executive order prohibiting city employees from discriminating based on sexual orientation. The court of appeals held that the citizen did not have standing but that the council member did. 9 S.W.3d 404. We conclude that neither plaintiff has standing. Therefore, we affirm in part and reverse in part the judgment of the court of appeals; and, without reaching the merits of either plaintiff's claim, render judgment dismissing the case because the trial court lacked subject matter jurisdiction.

## I.

The Houston City Charter allows voters, by petition, to protest the enactment or enforcement of an ordinance or resolution of the city council. After gathering the required signatures, voters may file the petition with the council, which then must reconsider its action. If the council decides not to repeal the ordinance or resolution, it must then submit the issue to a public referendum. *See generally* Houston City Charter, art. VIIb, § 2.

In 1984, the Houston city council approved an ordinance prohibiting discrimination based on sexual orientation in city hiring, promotion, and contracting. Thereafter, plaintiff Richard Hotze and other private citizens organized a campaign to repeal the ordinance. They submitted a proper petition to the City, and the council declined to repeal the ordinance. At the resulting election in 1985, the voters rejected the anti-discrimination ordinance, 198,563 to 44,706. Hotze alleges that he voted against the ordinance.

On February 16, 1998, Houston Mayor Lee P. Brown issued executive order EO 1–8, "prohibit[ing] discrimination or retaliation on the basis of sexual orientation and [providing] in all city programs and in all related activity equal employment and economic opportunity at every level of municipal government without regard to sexual orientation." Under the City Charter, the mayor has the power to enforce laws and ordinances and to prescribe rules "necessary or expedient for the general conduct of the administrative department." Art. VI, § 7a. The city council exercises all legislative powers of the city. Art. VII, § 10. The Charter also provides that the civil service commission, with the city council's approval, shall make rules and regulations for the conduct of its business and employees, including provisions regarding discrimination. Art. Va, §§ 2, 4. Mayor Brown consulted with neither the city council nor the civil service commission in developing the anti-discrimination policy. Plaintiff Robb Todd was a council member when the Mayor issued the order.

On February 25, 1998, nine days after the Mayor issued the executive order, Hotze and Todd sued Mayor Brown and the City (collectively, the City), seeking a declaration that EO 1–8 is invalid and temporary and permanent injunctions against its enforcement. Hotze and Todd contend that the Mayor's executive order both nullified the 1985 election and usurped the city council's authority. The City moved to dismiss for lack of subject matter juris-

diction, asserting that both plaintiffs lacked standing. The trial court concluded that Hotze did not have standing and dismissed his claim. But it decided that Todd did have standing and temporarily enjoined the City from enforcing the executive order. Hotze appealed the trial court's order dismissing his claim, and the City appealed from the temporary injunction.

The court of appeals affirmed. 9 S.W.3d at 407. It unanimously held that Todd had standing and affirmed the injunction. *Id.* at 413. By a divided vote, it also affirmed the trial court's judgment on Hotze's lack of standing. *Id.* at 411; *id.* at 415 (Amidei, J., dissenting). Both Hotze and the City seek review in this Court.

### II.

We must first decide whether we have jurisdiction over this interlocutory appeal. This lawsuit, initiated by a joint petition of co-plaintiffs seeking identical relief, has proceeded from its inception as a single case. After the trial court dismissed Hotze's claim for lack of standing, he could have sought a severance so that the dismissal against him would have been an appealable final judgment. In that event, both the court of appeals and this Court would unquestionably have had jurisdiction over his claim.

Even without a severance, the court of appeals nevertheless asserted jurisdiction over Hotze's interlocutory appeal by construing the trial court's dismissing Hotze's claim for lack of standing as "effectively den[ying] the temporary injunction, thus bringing his appeal within [Texas Civil Practices and Remedies Code] section

51.014(a)(4)" (allowing appeal from interlocutory order granting or refusing temporary injunction). 9 S.W.3d at 408. The court of appeals then treated the City's claims as cross-points without considering whether they had an independent jurisdictional basis. 9 S.W.3d at 411–14.[1]

Both the City and Hotze petitioned for review. Hotze alleges jurisdiction under Texas Government Code sections 22.001(a)(1) and 22.225(c), which give this Court jurisdiction over final and interlocutory orders when the "justices of the court of appeals disagree on an issue of law material to the decision." In a separate petition for review, the City alleges jurisdiction under Texas Government Code section 22.001(a)(6), which gives this Court jurisdiction to review an error of law in a court of appeals' opinion that "is of such importance to the jurisprudence of the state that, in the opinion of the supreme court, it requires correction...."

The City's jurisdictional allegation is without merit. Section 22.001(a)(6), while providing generally for review of decisions important to the jurisprudence of the state, excludes cases in which the court of appeals' jurisdiction is made final by statute. The court of appeals' jurisdiction over this appeal is made final by Texas Government Code section 22.225. "[A] judgment of a court of appeals is conclusive on the law and facts, and a writ of error is not allowed from the Supreme Court in ... interlocutory appeals that are allowed by law," TEX. GOV'T CODE § 22.225(b)(3), and appeals "from an order ... in which a temporary injunction has been granted." TEX. GOV'T CODE § 22.225(b)(4). The City's appeal from the

---

1. The court of appeals did have independent jurisdiction to review the order denying the City's motion to dismiss for want of jurisdiction and granting the temporary injunction. *See* TEX. CIV. PRAC. & REM.CODE §§ 51.014(a)(8)

(allowing interlocutory appeal of order granting or denying plea to the jurisdiction by governmental unit), 51.014(a)(4) (allowing interlocutory appeal of grant of temporary injunction).

denial of its plea to the jurisdiction against Todd is interlocutory. *See* Tex. Civ. Prac. & Rem.Code § 51.014(a)(8). The City also appealed the issuance of a temporary injunction against it. *See* Tex. Civ. Prac. & Rem.Code § 51.014(a)(4). Thus, the jurisdiction of the court of appeals is final, and the City has not excepted to that rule of finality.

■ Todd contends that the City's failure to allege a proper jurisdictional basis means that this Court cannot review its claims. We disagree.

Todd recognizes that the one statutory provision that the City could plausibly have argued to confer jurisdiction is section 22.225(c). That subsection provides that section 22.225 "does not deprive the supreme court of jurisdiction of a civil case brought to the court of appeals from an appealable judgment of a trial court in which the justices of the courts of appeals disagree on a question of law material to the decision." Tex. Govt.Code § 22.225(c). But Todd contends that even though Hotze alleged jurisdiction under this provision, the City did not. Even if it had, Todd says, the City still could not have invoked the Court's jurisdiction on that basis because none of the City's points of error relate to an issue raised in the dissenting opinion. *See Harry Eldridge Co. v. T.S. Lankford & Sons, Inc.*, 371 S.W.2d 878, 879 (Tex.1963). That is, the dissenting opinion in the court of appeals dealt only with the holding that Hotze lacks standing, while the City's complaint here is only about the court's unanimous holding that Todd has standing.

■ We reject Todd's suggestion that we do not have jurisdiction over the City's appeal. As we have repeatedly recognized, if our jurisdiction is properly invoked on one issue, we acquire jurisdiction of the entire case. *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 643–

44 (Tex.1995); *Stafford v. Stafford*, 726 S.W.2d 14, 15 (Tex.1987); *Harry Eldridge Co.*, 371 S.W.2d at 879; *United Am. Ins. Co. v. Selby*, 161 Tex. 162, 338 S.W.2d 160, 161–62 (1960); *Pittman v. Baladez*, 158 Tex. 372, 312 S.W.2d 210, 213 (1958) (citing older cases). Unquestionably, we have jurisdiction to hear Hotze's appeal from the effective denial of his request for a temporary injunction because his standing was the issue that prompted the dissenting opinion. Tex. Gov't Code §§ 22.001(a)(1), 22.225(c). And our well-established extended jurisdiction doctrine gives us authority to consider claims over which we would otherwise lack jurisdiction, so long as they are raised with a claim that is within our jurisdiction. *See Randall's Food Markets, Inc.*, 891 S.W.2d at 643–44 (reviewing slander claim, which was then not within Court's jurisdiction, along with other claims that provided basis for Court's jurisdiction); *Stafford*, 726 S.W.2d at 15 (reviewing divorce claim, which was then not within Court's jurisdiction, when petitioner also appealed from personal injury claim). The Court would not have jurisdiction over the City's appeal if Hotze had not also appealed; but because he did, "we acquire jurisdiction of the entire case." *Harry Eldridge Co.*, 371 S.W.2d at 879; *cf. Commercial Standard Ins. Co. v. Robinson*, 137 Tex. 184, 151 S.W.2d 795, 796 (1941) (noting that while issue on which Court reversed judgment would not have been sufficient, standing alone, to confer jurisdiction over case, the assignment of error on other grounds, over which Court did have jurisdiction, was sufficient).

■ Further, under section 22.225(c), this Court has jurisdiction to review "a civil *case* brought to the court of appeals from an appealable judgment of a trial court in which the justices of the courts of appeals disagree on *a* question of law material to the decision. . . ." Tex. Gov't Code

ANN. § .22.225(c) (emphasis added). "It is the case, not merely the question as to the statute, over which the jurisdiction is extended by the language. The existence of the question is the reason why the jurisdiction is given, but it is the case that is brought within it." *Texas & P. Ry. v. Webb,* 102 Tex. 210, 114 S.W. 1171, 1173–74 (1908) (quoted in *Holland v. Nimitz,* 111 Tex. 419, 239 S.W. 185, 186 (1922)). The justices of the court of appeals need not disagree on *all* the questions of law for us to consider all the issues raised on appeal. *See Surgitek, Bristol–Myers Corp. v. Abel,* 997 S.W.2d 598, 601 (Tex. 1999) (taking jurisdiction because of dissent on one element of venue statute but resolving all issues in case); *Mann v. Mann,* 607 S.W.2d 243, 244–46 (Tex.1980) (taking jurisdiction on basis of dissent on trial court's alleged abuse of discretion in property division but also reviewing alleged abuse of discretion in appointment of master). Because the justices of the court of appeals disagreed on Hotze's standing, and because that issue is properly before us for determination, we have jurisdiction to review Todd's standing as well.

### III.

■■■ We now consider whether Hotze has standing to bring his case. No Texas court has ever recognized that a plaintiff's status as a voter, without more, confers standing to challenge the lawfulness of governmental acts. Our decisions have always required a plaintiff to allege some injury distinct from that sustained by the public at large. *Blum v. Lanier,* 997 S.W.2d 259, 261 (Tex.1999); *Hunt v. Bass,* 664 S.W.2d 323, 324 (Tex.1984) (citing cases). This limitation inheres in the nature of standing. "The standing require-

ment stems from two limitations on subject matter jurisdiction: the separation of powers doctrine and, in Texas, the open courts provision." *Texas Ass'n of Bus. v. Texas Air Control Bd.,* 852 S.W.2d 440, 443 (Tex.1993). Both these provisions require an actual, not merely a hypothetical or generalized grievance. *Id.* at 444. In particular, our separation of powers article, TEX. CONST., art. II, § 1, prohibits courts from issuing advisory opinions that decide abstract questions of law without binding the parties. *Id.*

Hotze contends that he possesses an injury distinct from the general public because he voted in the 1985 referendum, his vote was for the prevailing side, and Mayor Brown's executive order negated his vote.[2] We conclude that this proposed rationale for standing is too broad because the injury he identifies is not unique to him. Indeed, it is shared by all living Houstonians who were among the 198,563 electors who actually voted against the proposed ordinance. In no way does Hotze's status as a voter give him an interest sufficiently peculiar to satisfy our standing requirements.

This Court has never recognized standing on the basis of the results—as opposed to the process—of an initiative election. In *Blum v. Lanier,* for example, we held that a qualified voter who signed an initiative petition has standing to challenge the form in which a referendum is put to the citizens. 997 S.W.2d at 262. Because he objected to the ballot description of the proposed charter amendment, we concluded that the voter could seek to enjoin the referendum election. *Id.* We relied on our earlier decision in *Glass v. Smith,* 150 Tex.

---

**2.** Hotze did not base his assertion of standing on the fact that he was a petition organizer and signer. *See Blum,* 997 S.W.2d at 261–62 (rejecting similar argument). At oral argu-

ment, he clarified that he asserted standing more broadly, based on the fact that he "voted and was a winner."

632, 244 S.W.2d 645 (1951), in which we affirmed a writ of mandamus requiring municipal authorities to hold a voter-initiated election after the requisite number of signatures were collected, concluding that the signers had a justiciable interest in their proposed ordinance being submitted to the people for a vote. 244 S.W.2d at 648. We extended that principle in *Blum* to give the complainant not merely an interest in the election being held, but also in having it validly conducted. 997 S.W.2d at 262, 264.

*Blum* and *Glass* are narrow holdings, affording petition signers the right to challenge the referendum process but saying nothing about the right to protect the referendum results from subsequent changes. They are consistent with the judiciary's limited role in elections disputes, which provides a remedy to undo elections tainted by fraud, illegality, or other irregularity. *Blum*, 997 S.W.2d at 262; *De Shazo v. Webb*, 131 Tex. 108, 113 S.W.2d 519, 524 (1938). But Hotze does not allege impurity in the 1985 vote process. Rather, relying on *Taxpayers' Association of Harris County v. City of Houston*, 129 Tex. 627, 105 S.W.2d 655 (1937), he seeks to invoke the results of a long-completed, validly executed election to enjoin the Mayor's action, which he claims effectively overturned the people's vote. The plaintiffs in *Taxpayers* sought to enjoin the results of a referendum in which Houston voters had approved an ordinance setting minimum salaries for certain city officers. *Id.* at 656. The plaintiffs argued that only the city council, not the voters, had the authority to approve the ordinance. *Id.* We denied the injunction, after noting that "[n]o issue [was] raised to the regularity of the election in any of its stages." *Id.* at 656. We concluded that the Charter initiative and referendum power affords voters the same authority to legislate as the council and that setting salaries for public officials

and employees is a legislative power. *Id.* at 657. We noted further that because the people's initiative and referendum power is reserved, not granted, to them, "such charter provisions should be liberally construed in favor of the power reserved." *Id.*

Hotze contends that part of "liberally construing" his referendum power includes recognizing his standing to shield his "no" vote from disturbance by the executive branch. We disagree. In *Taxpayers*, we "liberally construed" the initiative power by refusing to enjoin the enforcement of a voter-adopted ordinance. *Id.* at 657–58. But Hotze exercised the full breadth of his referendum power when he was allowed to vote in the untainted 1985 election to repeal the ordinance. Under our precedents, Hotze does not have standing to protect his "no" vote from future action.

■ Hotze next points to City Charter, article VIIb, section 9, which provides that any ordinance adopted by popular vote may be amended or repealed only by popular vote. He urges that the same rule should apply when voters rescind an ordinance even though the Charter is silent on this point. We disagree. Just because citizens can shield positive enactments from repeal or amendment by the city council or the mayor does not mean that they have standing perpetually to bar future action on rejected proposals, or nonenactments. A successful "no" vote may memorialize public opinion on an issue at a particular time and place, but the rejection of a proposal by a public referendum is not an enactment of positive law that can be shielded from subsequent modification.

■ Finally, we are not persuaded by Hotze's reliance on federal legislative standing cases to support his position. Hotze asserts that, as a voter in the 1985 referendum, he became a legislator. *See Blum*, 997 S.W.2d at 262 (citing *Glass*, 244

S.W.2d at 649) (recognizing that "[c]itizens who exercise their rights under the initiative provisions act as and 'become in fact the legislative branch of the municipal government.'"). Then he contends that, as a legislator, he has standing to challenge the Mayor's executive order, relying on the United States Supreme Court's decision in *Coleman v. Miller*, 307 U.S. 433, 59 S.Ct. 972, 83 L.Ed. 1385 (1939).

The *Coleman* plaintiffs were twenty Kansas senators who lost a vote to defeat a proposed amendment to the federal Constitution because the lieutenant governor cast the tie-breaking vote for the amendment. 307 U.S. at 436, 59 S.Ct. 972. The legislators challenged the lieutenant governor's right to vote on the ground that he was not part of the "legislature," as required by Article V of the United States Constitution. *Id.* at 446–47, 59 S.Ct. 972. The Supreme Court concluded that the plaintiffs had an adequate interest for standing purposes because their "votes against ratification have been overridden and virtually held for naught although … [they] would have been sufficient to defeat ratification." *Id.* at 438, 59 S.Ct. 972.

Hotze contends that, like the senators in *Coleman*, all people who voted against the ordinance in 1985 had their votes "overridden and virtually held for naught" by the Mayor's 1998 executive order. But neither Hotze's nor anyone else's vote was nullified. In fact, the votes were given full effect and were sufficient to defeat the proposed ordinance, which did not go into effect. The Mayor's later order did not operate as a direct, contemporaneous nullification of votes like the lieutenant governor's deciding vote in *Coleman*.

Even if *Coleman* were on point, its effect has been undermined by the Supreme Court's recent decision in *Raines v. Byrd*, 521 U.S. 811, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997). In *Raines*, the Court held that six members of Congress who voted against legislation authorizing a presidential line item veto did not have standing to challenge the act's constitutionality. *Id.* at 830, 117 S.Ct. 2312. The Court concluded that *Coleman* "provides little meaningful precedent," *id.* at 824, 117 S.Ct. 2312, and "stands, (at most) for the proposition that legislators whose votes would have been sufficient to defeat (or enact) *a specific legislative Act* have standing to sue … on the ground that their votes have been completely nullified." *Id.* at 823, 117 S.Ct. 2312 (internal references omitted) (emphasis added); *see Chenoweth v. Clinton*, 181 F.3d 112, 116 (D.C.Cir.1999) ("Although *Coleman* could be interpreted more broadly, the *Raines* Court read the case to stand only for [this] proposition"), *cert. denied*, 529 U.S. 1012, 120 S.Ct. 1286, 146 L.Ed.2d 233 (2000). To accept Hotze's argument, we would have to conclude that the 1985 referendum and the 1998 executive order operate together as "*a specific legislative act*," ignoring the reality that they were two independent acts of two different branches of city government, occurring thirteen years apart. Therefore, we conclude that Hotze lacks standing to seek a judicial remedy for his claim.

### IV.

■ Next, we consider whether Todd has standing as a member of the city council to challenge the Mayor's executive order. Todd contends that under the City Charter, the city council has final authority to approve civil service commission personnel policies for city workers, which the mayor's general authority to prescribe rules for the administrative department cannot displace. He asserts standing because the Mayor, by issuing an executive order prohibiting discrimination based on sexual orientation in all city programs and

activities, usurped Todd's power as a city council member.[3]

The standing doctrine identifies those suits appropriate for judicial resolution. *Whitmore v. Arkansas*, 495 U.S. 149, 154–55, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990). As we explained above, under Texas law, standing limits subject matter jurisdiction to cases involving a distinct injury to the plaintiff and "a real controversy between the parties, which . . . will be actually determined by the judicial declaration sought." *Texas Workers' Compensation Comm'n v. Garcia*, 893 S.W.2d 504, 517–18 (Tex.1995); *see also State Bar v. Gomez*, 891 S.W.2d 243, 245 (Tex.1994).

To guide our decision on this issue of first impression for Texas, we may look to the similar federal standing requirements for guidance. *Texas Ass'n of Bus.*, 852 S.W.2d at 444. "To meet the standing requirements of Article III, '[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" *Raines*, 521 U.S. at 818–19, 117 S.Ct. 2312 (quoting *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)) (emphasis in *Raines*). The United States Supreme Court has "consistently stressed that a plaintiff's complaint must establish that he has a 'personal stake' in the alleged dispute" and that the injury suffered is "concrete and particularized." *Id.* at 819, 117 S.Ct. 2312 (citing *Lujan v. Defenders of*

*Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).

Todd claims that, as a city council member, he has suffered an injury distinct from the general public. He asserts that the Mayor, by issuing EO 1–8, exceeded his administrative authority and encroached on the council's expressly allocated power to approve all civil service commission rules for city employees. On the one hand, Todd's purported injury is distinct because he does not seek merely to make the Mayor follow the law but to follow the law defining his mayoral authority *vis à vis* the council's authority. *See Raines,* 521 U.S. at 832, 117 S.Ct. 2312 (Souter, J., concurring) (noting that members of Congress have more direct and tangible interest in loss of legislative power than general citizenry does).

On the other hand, Todd's injury as a city council member is vague and generalized, not personal and particularized. Todd does not and cannot challenge the anti-discrimination policy's actual operation because it does not apply to him.[4] Nor does he sue as a representative of constituents who face actual or threatened injury because of the policy. *Cf. City Council v. City of Pittsburgh,* 155 Pa. Cmwlth. 328, 625 A.2d 138, 143 (1993) (discussing standing of city council members as representatives of their districts' residents). The only injury Todd asserts is that the Mayor acted outside of his authority and usurped the council's authority. And even in that assertion, he is not suing

---

3. Because standing is a component of subject matter jurisdiction, we consider Todd's standing as we would a plea to the jurisdiction, construing the pleadings in favor of the plaintiff. *See Texas Ass'n of Bus.*, 852 S.W.2d at 445; *see also Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Thus, for the purposes of the standing inquiry, we assume without deciding that the Mayor did usurp Todd's authority.

4. The policy does not govern the actions of elected officials. It applies only to "city employees," defined as "all employees who work for the city . . . including appointive officials, city attorneys and their professional staff, and part-time, temporary, emergency or executive level workers."

on the council's behalf and is not joined by any other council members in his suit. Thus, on the facts of this case, we conclude that Todd has not alleged a sufficiently particularized, personal injury to afford him standing.

## V.

Because neither Hotze nor Todd has standing to challenge the Mayor's 1998 executive order, we reverse the court of appeals' judgment that Todd has standing, affirm its judgment that Hotze lacks standing, and render judgment dismissing all claims for want of jurisdiction. In so doing, we express no opinion on the merits of the underlying claim.

Justice ENOCH filed an opinion concurring in part and dissenting in part.

Justice ENOCH, concurring and dissenting.

In 1985 the people of Houston spoke. Exercising a power reserved to them under the City Charter, they rejected an ordinance enacted by the city council. Some years later, Houston's mayor resurrected the substance of that rejected ordinance in an executive order, effectively overriding the expressed will of Houston's citizens. The question the Court considers today is whether a qualified voter, who voted in the election that defeated the ordinance, has sufficient interest in the power of his vote to challenge the mayor's action. The Court says no. I disagree.

The path to Richard Hotze's standing is straightforward. To establish standing,

Hotze must show that he has an interest distinct from the general public such that the mayor's action caused him some special injury.[1] He has done so. To begin with, this Court's opinions make clear that citizens exercising referendum power, as Hotze did, in effect become legislators.[2] And legislators have a particularized interest in enforcing the effectiveness of their votes on a specific legislative act.[3] In issuing the executive order, the mayor nullified Hotze's vote on the ordinance. Hotze therefore has standing to sue to protect that vote.[4] The same reasoning applies to anyone who voted in the referendum, because all voters, whichever side they took, share an interest in protecting the results of a duly conducted election in which they participated.

The Court floats a variety of reasons to avoid this simple, and correct, result. But none of these reasons holds water.

First, the Court posits that Hotze's standing analysis is too broad because Hotze shares his injury with other voters.[5] But the fact that a particular injury may be shared among several individuals doesn't deprive those who share it of standing. If that were true, no plaintiff in a class action or mass tort case would have standing. The injury here is peculiar to voters in the 1985 referendum. It does not extend to the general public at large, nor even to all registered voters in Houston. But those voters who are harmed, even if there are nearly 200,000 of them, have an interest they may sue to protect.[6]

1. *Blum v. Lanier,* 997 S.W.2d 259, 261 (Tex. 1999); *Hunt v. Bass,* 664 S.W.2d 323, 324 (Tex.1984).

2. *Blum,* 997 S.W.2d at 262 (quoting *Glass v. Smith,* 150 Tex. 632, 244 S.W.2d 645 (1951)).

3. *See Raines v. Byrd,* 521 U.S. 811, 823, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997); *Coleman*

*v. Miller,* 307 U.S. 433, 438, 59 S.Ct. 972, 83 L.Ed. 1385 (1939).

4. *Raines,* 521 U.S. at 823, 117 S.Ct. 2312; *see also deParrie v. Oregon,* 133 Or.App. 613, 893 P.2d 541, 542 (1995).

5. 53 S.W.3d at 302.

Furthermore, says the Court, in the past we have specifically recognized only a protected interest in the process of an election, not in its results.[7] But what use is an interest in an election's process without a corresponding interest in enforcing the results? Of course, in two of the cases the Court cites, only the process and not the outcome was at issue.[8] The third case the Court discusses actually does suggest that at least some interest exists in the results of a valid referendum election. In *Taxpayers' Association of Harris County v. City of Houston*,[9] the Taxpayers' Association, along with individual taxpayers, sued to enjoin enforcement of two ordinances, enacted by referendum, fixing salaries for certain city officers and employees. The Court chose to protect the results of the valid referendum, in part out of deference to the legislative power that the City Charter reserves to the people.[10] In this case, if the voters can't sue to protect the results of the referendum, who can?

The Court suggests that any interest in election results extends only to "a direct, contemporaneous nullification of votes," and that Hotze's vote was given effect in 1985 because the ordinance did not go into effect.[11] It seems to me that the mayor's executive order is just as effective a nullification, regardless of when it happened. It further seems to me that, under the City Charter, the results of the 1985 referendum must stand until the people choose to undo them. But that is not the question. The question, for standing purposes, must be whether there was a nullification at all, not whether it happened a day, a month, or a year after the original election. The length of time between the referendum and the executive order may be relevant to the merits of Hotze's challenge, but it should not control whether Hotze, or any other voter, has a sufficient interest to bring a claim.

Finally, the Court incorrectly concludes that the U.S. Supreme Court's decision in *Raines v. Byrd*[12] undermines Hotze's position. In fact, *Raines* preserved the relevant holding in *Coleman v. Miller*[13] that supports Hotze's argument: "our holding in *Coleman* stands ... for the proposition that legislators whose votes would have been sufficient to defeat (or enact) a specific legislative act have standing to sue if that legislative action goes into effect (or does not go into effect), on the ground that their votes have been completely nullified."[14] Here, Hotze, acting as a legislator, voted on a specific legislative act. That act was defeated, but later revived by the mayor's executive order. The substance of the defeated act went into effect. The mayor's order thus completely nullified the referendum votes. Hotze's claim falls squarely within those recognized by *Coleman* and *Raines*.

I agree that the Court has jurisdiction in this case. And I concur with the Court that city council member Rob Todd does

6.  *See, e.g., Baker v. Carr*, 369 U.S. 186, 206, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); *see also deParrie*, 893 P.2d at 542.

7.  53 S.W.3d at 302.

8.  *See Blum*, 997 S.W.2d at 260; *Glass*, 244 S.W.2d at 647.

9.  129 Tex. 627, 105 S.W.2d 655 (1937).

10.  *See Taxpayers' Ass'n*, 105 S.W.2d at 657.

11.  53 S.W.3d at 304.

12.  521 U.S. 811, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997).

13.  307 U.S. 433, 59 S.Ct. 972, 83 L.Ed. 1385 (1939).

14.  *Raines*, 521 U.S. at 823, 117 S.Ct. 2312.

not have standing. His is the type of injury *Raines* rejected as insufficient to establish standing—a general injury to the institutional effectiveness of the City Council.[15]

I would, however, hold that Hotze has standing and remand his claim to the district court. Thus, as to the Court's opposite conclusion, I respectfully dissent.

---

15. *See id.* at 830, 117 S.Ct. 2312.