# IN THE SUPREME COURT OF TEXAS

════════════

No. 20-0739

════════════

IN RE STEVEN HOTZE, M.D., HON. ALLEN WEST, REPUBLICAN PARTY OF TEXAS, HON. SID MILLER, HON. MARK HENRY, HON. CHARLES PERRY, HON. PAT FALLON, HON. BILL ZEDLER, HON. CECIL BELL, JR., HON. STEVE TOTH, HON. DAN FLYNN, HON. MATT RINALDI, HON. RICK GREEN, HON. MOLLY WHITE, HARRIS COUNTY REPUBLICAN PARTY/HON. KEITH NIELSEN, HON. BRYAN SLATON, HON. ROBIN ARMSTRONG, M.D., JIM GRAHAM, HON. CATHIE ADAMS, HON. JOANN FLEMING, JULIE MCCARTY, SHARON HEMPHILL, AND AL HARTMAN, RELATORS

════════════════════════════

ON PETITION FOR WRIT OF MANDAMUS

════════════════════════════

JUSTICE BLACKLOCK, joined by JUSTICE BUSBY except as to Part I.C., concurring in the denial of the petition for writ of mandamus.

"Jurisdiction is the power to decide." *Martin v. Sheppard*, 201 S.W.3d 810, 813 (Tex. 1947). Limitations on this Court's jurisdiction are a "constitutional curb on judicial power" and restrict "our very authority to decide cases in the first place." *In re Allcat Claims Serv., L.P.*, 356 S.W.3d 455, 474 (Tex. 2011) (Willett, J., dissenting). The petitioners raise important questions about the constitutionality of government action during the coronavirus crisis, but their petition does not successfully invoke the Court's jurisdiction. This Court can no more decide cases without jurisdiction than it can enact statutes or amend the Constitution.

Without jurisdiction, this Court is prohibited from deciding the petitioners' claims by the very separation-of-powers principles the petitioners invoke. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993) ("One limit on courts' jurisdiction under both the state and

federal constitutions is the separation of powers doctrine."). The petition asks the Court to say whether another branch of government has exceeded its constitutional authority. The irony, of course, is that by answering that question without jurisdiction, we would be exceeding our own constitutional authority. A court that carelessly exceeds the constitutional boundaries on its own power can hardly claim the authority to determine whether another co-equal branch of government has done the same. "Just as other government officials must not exceed their rightful power in extraordinary circumstances, this Court also must not do so." *In re Salon a la Mode*, ___ S.W.3d ___, ___ (Tex. 2020) (Blacklock, J., concurring).

## I.

The Court lacks jurisdiction for several reasons. To begin with, there are multiple deficiencies in the petitioners' standing. "Standing is a constitutional prerequisite to maintaining suit." *Williams v. Lara*, 52 S.W.3d 171, 178 (Tex. 2001). It requires "a concrete injury to the plaintiff and a real controversy between the parties that will be resolved by the court." *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 154 (Tex. 2012). Texas has adopted the federal courts' standing doctrine into our rules for the constitutional jurisdiction of state courts. *Id.* To maintain standing, petitioners must show: (1) an "injury in fact" that is both "concrete and particularized" and "actual or imminent"; (2) that the injury is "fairly traceable" to the defendant's challenged actions; and (3) that it is "'likely,' as opposed to merely 'speculative,' and that the injury will be 'redressed by a favorable decision.'" *Id.* at 154–55 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). These elements make up the "irreducible constitutional minimum of standing," and must all be present. *Lujan*, 504 U.S. at 559. Because deciding cases without jurisdiction would exceed the judicial branch's authority, the standing inquiry must be especially

2

rigorous where the suit "seek[s] to correct an alleged violation of the separation of powers" by another branch of government. *In re Abbott*, 601 S.W.3d 802, 809 (Tex. 2020).

A.

First, the petitioners have sued the Secretary of State, but the injury they claim is not "fairly traceable" to her actions. Petitioners challenge the Governor's suspension of Election Code section 85.001, governing the schedule for early voting, and section 86.001(a-1), governing the in-person delivery of mail-in ballots to the early voting clerk's office. Even if the petitioners are injured by the Governor's adjustment of these statutory rules pursuant to his emergency powers, that injury is not traceable to the Secretary of State, who neither conducts early voting nor receives hand-delivered mail-in ballots. Local election officials, not the Secretary of State, carry out the duties prescribed by the statutes in question. Neither is the Secretary responsible for the proclamation itself, which was issued unilaterally by the Governor. Assuming for argument's sake that the Governor's proclamation injures the petitioners, that injury is not at the hands of the Secretary of State. As a result, the petitioners cannot establish the "traceability" element of standing.

B.

Second, it is not "likely," or even possible, that the claimed injury would be redressed by a writ of mandamus directed to the Secretary of State. Because the Secretary does not implement the laws in question and does not control whether local officials do so, this Court ordering the Secretary to do or not do anything would not change local officials' obligation to implement the law in accordance with the Governor's proclamation. The petitioners point to language in the Governor's proclamation directing the Secretary of State to notify county judges of the

3

proclamation. But the proclamation itself, not the notice from the Secretary, is the source of the local officials' obligation to adjust their practices. Even if the Court agreed with the petitioners on the merits, directing the Secretary of State to rescind her notice or to send a new one contradicting the first would not redress the situation because the proclamation itself would remain in effect.

## C.

Third, the petition does not demonstrate that the challenged election activities will inflict a concrete and particularized injury-in-fact on any of the petitioners. Many of the petitioners are citizens who want their government to comply with the law as they see it. That is a commendable motive, but both this Court and the U.S Supreme Court have repeatedly held that an "undifferentiated public interest in executive officers' compliance with the law" does not confer standing. *Lujan*, 504 U.S. at 577; *see also Brown v. Todd*, 53 S.W.3d 297, 302 (Tex. 2001) ("Our decisions have always required a plaintiff to allege some injury distinct from that sustained by the public at large."). Although all citizens share a general interest in lawful government action, "recognizing standing based on such an undifferentiated injury is fundamentally inconsistent with the exercise of the judicial power." *Protect Our Parks, Inc. v. Chicago Park Dist.*, 971 F.3d 722, 731 (7th Cir. 2020) (Barrett, J.). To paraphrase Judge Barrett (and the repeated statements of this Court and the U.S. Supreme Court), merely alleging that the government is violating the law does not invoke the courts' jurisdiction. Instead, the plaintiff must allege, and ultimately prove, that the government's conduct inflicts a concrete and particular injury *on the plaintiff* that is distinct from the undifferentiated injury to the public caused by unlawful government action. *In re Abbott*, 601 S.W.3d at 811.

4

The petition does not even attempt to meet this burden. It does not allege that the Governor's proclamation burdens the petitioners' voting rights or otherwise concretely injures the petitioners as citizens or voters. Some of the petitioners are political organizations, but the petition does not allege that the Governor's action will harm their preferred candidates' electoral prospects. Some petitioners are candidates, but the petition does not allege how the challenged adjustments to election procedures injure their candidacies.[1] Some of the petitioners are current legislators, but the petition alleges no particular injury to them. In general, individual legislators lack standing to sue to vindicate the Legislature's institutional prerogatives against executive-branch encroachment. *Raines v. Byrd*, 521 U.S. 811, 830 (1997) (holding that individual members of Congress lacked standing to bring constitutional challenge to the Line Item Veto Act). The petition makes no argument for why these petitioner-legislators nevertheless have standing.

The petition does allege that petitioner Mark Henry, the Galveston County Judge (the petition does not say whether he is suing in his official or individual capacity), is being "unlawfully forc[ed]" to implement the Governor's order. The only example provided is that Judge Henry was the recipient of the Secretary of State's notice informing Galveston County of the Governor's proclamation. Merely receiving a notice is obviously not injury on its own. It is conceivable that the county judge's role in administering elections is such that he will suffer a legally cognizable injury-in-fact if he is required to comply with the Governor's proclamation. But the petition makes no attempt to explain why that is so. What is the county judge forced to do by the proclamation

---

[1] The petitioners in two related cases the Court also denies today, Nos. 20-0751 and 20-0760, sued a county clerk rather than the Secretary of State, but those petitions make no allegation of injury particular to the petitioners beyond the generalized injury suffered by the public when the Election Code is violated. Thus, the petitioners in those cases also did not adequately allege and prove the injury-in-fact required for standing.

that he would otherwise not do?  How is he injured by taking that action?  Is the county clerk, rather than the county judge, the local official truly responsible for implementing the proclamation?  Is the county judge asserting personal injury or injury to the county?  The petition makes no attempt to address these questions or to otherwise explain how the Governor's action injures the county judge.  Of course, even if the petition could establish an injury traceable to the *Governor*'s proclamation, that would not confer standing on the county judge to sue the *Secretary of State*, who is not the source of the alleged illegality and who can do nothing to remedy it.

D.

For these reasons, the petitioners have not alleged facts sufficient to establish the "constitutional prerequisite" of standing.  *Williams*, 52 S.W.3d at 178.  Even if their *allegations* were sufficient, however, that would not empower this Court to grant the requested relief.  When standing is in doubt, the plaintiff must not just *allege* sufficient facts.  He must come forward with *evidence* demonstrating a "particular personal interest which separates [him] from the general public."  *Hunt v. Bass*, 664 S.W.2d 323, 324 (Tex. 1984).  Petitioners neither provide such evidence nor explain why it is not required.[2]

---

[2] The lack of evidence supporting the petitioners' standing points to an additional defect in this original mandamus proceeding.  In litigation originating in district court, jurisdictional questions can be explored, including through the presentation of evidence, and the parties' jurisdictional theories can be refined and sharpened in preparation for appeal.  This does not necessarily have to take a great deal of time, *see State v. Hollins*, ___ S.W.3d ___ (Tex. App.—Houston [14th Dist.] 2020, pet. granted), but it is generally an essential part of the judicial process.  In an original mandamus proceeding in the Supreme Court, there is no mechanism for evidentiary development and nothing for the Court to consider besides the briefs of the parties and their attachments.  That is just one of the many reasons why granting relief in this procedural posture should be reserved for situations in which the entitlement to relief is clear and the urgent timeframe admits of no alternative.  Here, as the majority opinion correctly observes, the alleged time crunch is due entirely to the petitioners' unexplained delay in challenging gubernatorial actions announced over two months ago.

E.

Finally, in addition to lacking jurisdiction as a constitutional matter, the Court also lacks jurisdiction as a statutory matter.[3]  The petition invokes the Court's original jurisdiction under section 273.061 of the Election Code:  "The supreme court or a court of appeals may issue a writ of mandamus to compel the performance of any duty imposed by law in connection with the holding of an election . . . ."  The petition is vague about which of the Secretary of State's "dut[ies] imposed by law" the Court should compel.  Its most specific request is in the prayer for relief, which asks the Court to order the Secretary of State to "require" that in-person early voting not begin until the 17th day before election day.  It further asks this Court to order the Secretary to "only allow the delivery of a marked ballot in person to the early voting clerk's office while the polls are open on election day."  The petition never identifies what authority the Secretary of State has to override the Governor's actions and "require" or "allow" all 254 counties to ignore the Governor's proclamations.  Even if the Secretary thought the proclamation illegal, we are pointed to no authority that would authorize her—much less impose a duty on her—to issue her own orders to local election officials contradicting the Governor's.  *See Bullock v. Calvert*, 480 S.W.2d 367, 372 (Tex. 1972) (holding that Secretary's title "chief election officer" is not "a delegation of authority to care for any breakdown in the election process").  Because the actions the petitioners want the Secretary ordered to take are not "dut[ies] imposed by law," the original jurisdiction conferred by section 273.061 is lacking.

---

[3] Because constitutional standing is lacking, it would not matter if the petition triggered statutory jurisdiction under section 273.061.  Statutory grants of jurisdiction do not eliminate the constitutional restrictions on the Court's power.  *Fin. Comm'n of Tex. v. Norwood*, 418 S.W.3d 566, 582 n.83 (Tex. 2013).

For each of these independent reasons, the Court lacks jurisdiction over this petition. It therefore lacks the power to decide the constitutional questions the petition raises.

## II.

In the end, the petition seeks an advisory opinion declaring the Governor's proclamation invalid. *But see Brown*, 53 S.W.3d at 303 ("[O]ur separation of powers article, TEX. CONST., art. II, § 1, prohibits courts from issuing advisory opinions that decide abstract questions of law without binding the parties."). The petition's approach—and that of the dissent—seems to be that because of the gravity of the legal questions at stake, it does not matter much whether the petitioners' alleged injuries are traceable to the defendant's actions, or whether the Court is ordering the proper defendant to perform a duty imposed by law, or whether the performance of that duty will redress the alleged injury. The Court should overlook the jurisdictional, procedural, and prudential problems with this case and just resolve the merits of a pressing legal dispute. Then, presumably, everyone will be expected to abide by the Court's improperly solicited opinion of what the law is on a topic of overwhelming public importance. Any court that took such a cavalier approach to its jurisdiction would have no right to insist that its decisions be followed.

By declining to decide this case and others like it that have not been properly brought before us, this Court is by no means "abandon[ing] the constitution at the moment we need it most." *In re Salon a la Mode*, ___ S.W.3d at ___ (Blacklock, J., concurring). Quite the opposite. The Court is refusing to use the current crisis as an excuse to bypass the constitutional restrictions on its power. *Id*. To borrow from the dissent's regrettably overheated rhetoric, the true "disservice to the citizens of the State of Texas and the Texas Constitution" would be to violate the

8

constitutional restrictions on our power in order to decide whether other branches of government have violated the constitutional restrictions on their power.

I respectfully concur.

_____
James D. Blacklock
Justice

**OPINION DELIVERED:** October 7, 2020

9