Opinion issued April 14, 2005



     












In The
Court of Appeals
For The
First District of Texas




NOS. 01-04-01276-CV
          01-05-00374-CV




IN RE CARROLL G. ROBINSON, BRUCE R. HOTZE AND JEFFREY N.
DAILY, Relators




Original Proceedings on Petitions for Writ of Mandamus




O P I N I O N
          In these original proceedings, relators seek writs of mandamus to compel the
Mayor and the City Council of Houston, Texas (collectively, “the City”) to (1) enter
an order declaring the adoption of three propositions as new amendments to the city
charter, and (2) certify these new amendments to the Texas Secretary of State. We 
grant the requested relief.
BACKGROUND
          On November 2, 2004, the registered voters of the city of Houston voted on
three propositions to amend the city charter. Proposition One was endorsed by the
Mayor and placed limits on annual increases in city property taxes and utility rates
without prior voter approval. The ballot language of Proposition 1 provided:
The Charter of the City of Houston shall be amended to require voter
approval before property tax revenues may be increased in any future
fiscal year above a limit measured by the lesser of 4.5% or the
cumulative combined rates of inflation and population growth. Water
and sewer rates would not increase more than the cumulative combined
rates of inflation and population growth without prior voter approval. 
The Charter Amendment also requires minimum annual increases of
10% in the senior and disabled homestead property tax exemptions
through the 2008 tax year.

          Proposition Two was placed on the ballot after relators drafted a referendum
petition, organized and underwrote a petition drive, and obtained the necessary
signatures to have the petition placed on the ballot. Proposition 2 placed limits on
increases in combined city revenues without prior voter approval. The ballot
language of Proposition 2 provided:
The City Charter of the City of Houston shall be amended to require
voter approval before the City may increase total revenues from all
sources by more than the combined rates of inflation and population,
without requiring any limit of any specific revenue source, including
water and sewer revenues, property taxes, sales taxes, fees paid by
utilities and developers, user fees, or any other source of revenue.

          Proposition Three provided:
 
The City Charter of the City of Houston shall be amended to provide for
the City Controller to conduct internal audits of City departments,
offices, agencies and programs.

          In the November 2 election, voters were permitted to vote “FOR” or
“AGAINST” each of the three propositions. After the election was completed, the
City Counsel canvassed the vote and declared the results of the election as follows:
 
FOR

AGAINST


PROP 1

280,596
63.95%

158.152
36.05%

PROP 2

242,697
56.46%

187,169
43.54%

PROP 3

352,063
84.7%

63,596
15.3%

          As shown above, each proposition passed by greater than 50% of the vote cast
on that proposition.



          In these original proceedings, relators complain that the Mayor has failed to
comply with his ministerial duty under article 9.007 of the Local Government Code



to certify to the secretary of state authenticated copies of the amendments showing
that they have been approved by the voters of the municipality. The original
proceeding in which the Mayor is the respondent has been docketed in the court
under cause number 01-04-01276-CV. Relators also contend the City Council has
not complied with its ministerial duty under section 9.005(b) of the Local
Government Code


 to enter an order in the records of the city declaring that the
amendments were adopted. The original proceeding in which the City Council is the
respondent has been docketed in the court under cause number 01-05-00374-CV. JURISDICTION
          Our jurisdiction to consider an election mandamus is found in article 273.061
of the Election Code, which provides:
The supreme court or a court of appeals may issue a writ of mandamus
to compel the performance of any duty imposed by law in connection
with the holding of an election or a political party convention, regardless
of whether the person responsible for performing the duty is a public
officer.

Tex. Elec. Code Ann. § 273.061 (Vernon 2003) (emphasis added).

          The City contends that the duties of entering an order declaring the amendment
adopted and certifying its adoption to the secretary of do not involve duties imposed
“in connection with the holding of an election.” We disagree. 
          The supreme court has stated “that an election in this state is not a single event,
but a process, and that the entire process is subject to contest.” Dickson v. Strickland,
265 S.W. 1012, 1018 (Tex. 1924). Although this case does not involve an election
contest, it does involve the enforcement by mandamus of duties involved with the
“holding of an election,” an election being the entire process by which amendments
to the municipal code are voted on, enacted, and made effective. See Grant v.
Ammerman, 437 S.W.2d 547, 548-49 (Tex. 1969) (duty to canvas results of election
subject to mandamus because “canvassing of votes is a part of the election procedure
and is necessary to the determination of the result.”). Like the duty to canvass votes,
which occurs after an election is held, we are of the opinion that the duty to certify
and make effective laws that have been validly adopted by the voters is a necessary
component of the election process. The “holding of an election” would be a “vain
proceeding” if an amendment validly adopted by the voters of the city never becomes
law. See City of Dallas v. Dallas Consol. Elec. St. Ry. Co., 148 S.W. 292, 294 (Tex.
1912) (“[The canvassing of votes] is an integral part of the election itself, without
which the election is a vain proceeding . . .”). As such, we hold that mandamus will
lie to enforce ministerial duties arising in connection with an election, even though
those duties may not arise until after the results of the election have been canvassed.
STANDING
          The City also claims that the relators do not have standing to bring these
mandamus proceedings. Relying on Brown v. Todd, 53 S.W.3d 297 (Tex. 2001), the
City argues that the relators, as voters on propositions 1, 2, and 3, do not have
standing to bring these proceedings because they have suffered no injury that is
distinct from that of any other voter.
          In Brown, the plaintiff brought suit against the mayor of the city of Houston,
seeking a judgment declaring that an executive order issued by the mayor was invalid
because it effectively nullified the result of a previous referendum election. Id. at
299. The plaintiff claimed standing based solely on his status as a voter in the
referendum election. Id. at 302 n.2. In holding that the plaintiff did not have
standing, the supreme court stated, “In no way does [plaintiff’s] status as a voter give
him an interest sufficiently peculiar to satisfy our standing requirements.” Id. at 302. 
          In Brown, the court acknowledged that there was a narrow exception to the
general rule that voters do not have standing. Id. In Blum v. Lanier, the court held
that a voter who signed an initiative petition had standing to challenge the form in
which a referendum was put before the public. 997 S.W.2d 259, 262 (Tex. 1999). 
Similarly, in Glass v. Smith, the court recognized petition signers standing to seek a
writ of mandamus against municipal authorities to hold a voter-initiated election after
the requisite number of signatures had been obtained on the petition. 244 S.W.2d
645, 648 (Tex. 1951). As the Brown court recognized, Blum and Glass stand for the
proposition that petition signers have standing to challenge the referendum process,
although they do not have standing to challenge the results of the election. 53 S.W.3d
at 301-01.
          These cases are more like Blum and Glass than Brown because the relators are
not challenging the results of the election by way of this mandamus. Instead, they are
challenging the process of the election, i.e., the City’s refusal to see that the results
of the election are certified to the secretary of state and recorded in the City’s records
so that they might become effective. Also like Blum and Glass, relators claim that
their standing is not based solely on their status as voters. Instead, relators argue that
they have a particular interest in the outcome of this case because they organized and
financed a petition drive to get Proposition 2 on the ballot, helped draft the wording
of the referendum petition, signed the petition, and voted for Proposition 2. We agree
that relators have a particular interest in seeking to have a proposition that they
“sponsored” enacted as law once it is adopted by the citizens of the city in a
referendum election.
 
 
MINISTERIAL DUTY
          Having decided that we have jurisdiction to consider these mandamus
proceedings and that relators have standing to bring them, we turn next to the issue
of whether mandamus will lie, i.e., whether respondents have failed to perform 
ministerial duties for which relators have no adequate remedy at law. We examine
the statutory basis of the two duties alleged as the basis of this original proceeding.
Section 9.007 of the Local Government Code
          The first statute on which relators rely in seeking mandamus relief is section
9.007 of the Local Government Code, which provides:
(a) As soon as practicable after a municipality adopts a charter or
charter amendment, the mayor or chief executive officer of the
municipality shall certify to the secretary of state an authenticated copy
of the charter or amendment under the municipality’s seal showing the
approval by the voters of the municipality.

Tex. Loc. Gov’t Code Ann. § 9.007(a) (Vernon 1999) (emphasis added).

          We begin by noting that this section imposes a duty on the Mayor. Therefore,
the Mayor, not the City Council, is the proper respondent for a mandamus arising out
of this statute.
          The City argues that the duty imposed on the Mayor in this section does not
arise until after the City Council complies with its duty under section 9.005 to enter
an order declaring that the charter amendments are adopted. We disagree.
          The language of article 9.007 clearly states that the Mayor’s duty arises “as
soon as practicable after a municipality adopts . . . a charter amendment.” A charter
amendment is “adopted” when it is “approved by a majority of the qualified voters
of the municipality who vote at an election.” See Tex. Loc. Gov’t Code Ann. §
9.005(a) (Vernon 1999). Therefore, we conclude that the City of Houston “adopted”
the propositions when the voters passed each of the propositions by majority vote on
November 2, 2004. The Mayor’s duty under section 9.007 was triggered by the
municipality’s vote on November 2, 2004, and not by whether the City Council
subsequently acted to make the propositions that were adopted that day effective.
          We also note that section 9.007 states that the mayor “shall” certify to the
secretary of state a certified copy of the amendment adopted by the voters. In the case
of In re Roof, the court considered whether the city and the city secretary had a
ministerial duty to submit a proposed charter amendment to the voters. 130 S.W.3d
414 (Tex. App—Houston [14th Dist.] 2004) (orig. proceeding). The relevant statute
giving rise to the alleged duty provided that “[t]he governing body shall submit a
proposed charter amendment to the voters for their approval at an election if the
submission is supported by a petition signed by [the requisite number of voters].” Id.
at 416 (emphasis added). Nevertheless, the city secretary refused to submit the
proposed charter amendment. Id. at 415. She did not contest the number of qualified
signatures on the petition, but argued that she could not certify the petition because,
in her estimation, the proposed charter amendment conflicted with the city charter,
general state law, and the Texas Constitution. Id. The court of appeals held that it
was improper for the city secretary to refuse to certify the petition based on her
opinion that the proposed charter amendment conflicted with existing law. Id. at 418. 
The court further held that the statute did not give the city secretary any discretionary
duties. Id. Once the requisite number of petition votes were attained, she had a
nondiscretionary duty to submit the proposed charter amendment to the city’s
governing body. Id.
          Like the statute in Roof, article 9.007 uses the mandatory word shall in
describing the mayor’s duty to certify the amendment to the secretary of state. The
use of the word shall in a statute is generally construed as creating a nondiscretionary
duty. See Albertson’s, Inc. v. Sinclair, 984 S.W.2d 958, 961 (Tex. 1999); Tex. Gov’t
Code Ann. § 311.016(a), (b) (Vernon 2005) (providing that the word “may” creates
discretionary authority, and the word “shall” imposes a duty).
          We are similarly unpersuaded by the City’s argument that because proposition
2 violates the city charter,


 the Mayor has no duty certify it to the secretary of state. 
As with the city secretary in Roof, it is improper for the Mayor to refuse to comply
with his nondiscretionary duty under section 9.007 simply because he believes that
proposition 2, if enacted, would violate the city charter. As stated in Roof, “Such
questions concerning the validity of proposed charter amendments are properly
litigated later.” 131 S.W.3d at 418. Indeed, as the briefing in this case indicates,
relators have also filed an action in the district court seeking a declaration that
propositions 1 and 2 are not inconsistent, an issue we need not address in this
proceeding.
          The City also contends that mandamus will not lie against the Mayor because
there is no showing that he has refused to act. See Terrazas v. Ramirez, 829 S.W.2d
712, 723 (Tex. 1991) (orig. proceeding) (stating that mandamus will generally not lie
to compel action that has not first been demanded and refused). However, this
position is refuted by the City’s own briefing in which it states, “The Mayor intends
to propose an order declaring the adoption of Propositions 1 and 3 sometime before
the next fiscal year begins on July 1, 2005. He has no plans to propose such an order
for Proposition 2 because he believes that entering such an order and adding to the
charter a proposition that cannot be enforced, would be both superfluous and
confusing.” It is clear from this statement that the Mayor is refusing to certify
proposition 2.
          Therefore, we hold that, pursuant to section 9.007, the mayor has a
nondiscretionary duty to certify all three amendments to the secretary of state, even
though he believes that they are inconsistent.
Section 9.005 of the Local Government Code
          The second statute on which relators rely in seeking mandamus relief is section
9.005 of the Local Government Code, which provides:
(a) A proposed charter for a municipality or a proposed amendment to
a municipality’s charter is adopted if it is approved by a majority of the
qualified voters of the municipality who vote at an election held for that
purpose.
 
(b) A charter or an amendment does not take effect until the governing
body of the municipality enters an order in the records of the
municipality declaring that the charter or amendment is adopted.

Tex. Loc. Gov’t Code Ann. § 9.005(a),(b) (Vernon 1999) (emphasis added).

          We begin by noting that this section imposes a duty on the governing body of
the municipality. The term governing body, “if used with reference to a municipality,
means the legislative body of a city, town, or village, without regard to the name or
title given to any particular body.” Tex. Gov’t Code Ann. § 312.011(4) (Vernon
2005). Therefore, the City Council, not the Mayor, is the proper respondent for a
mandamus arising out of this statute.
          The City argues that section 9.005(b) does not impose a mandatory duty on the
City Council to enter an order in the city records declaring that the amendment is
adopted. Specifically, the City alleges that “[t]his provision neither mandates that the
municipality’s governing body must enter such an order nor prescribes the deadline
for entering such an order.” The City further alleges that “section 9.005 gives the
governing body the discretion to determine when or if to enter such an order and
allows it the discretion to determine whether a proposed amendment violates a city
charter, the laws of Texas, or the Texas Constitution.”
          It is true that section 9.005(b) does not contain the mandatory word “must.” 
However, our inquiry does not stop there. We must determine from the language of
the statute whether the legislature intended to create a mandatory duty for the City
Council to enter an order declaring the amendment adopted.
          In determining the legislature’s intent, we first look to the statute’s plain and
common meaning and presume that the legislature intended the plain meaning of its
words. Tex. Gov’t Code Ann. § 311.011(a) (Vernon 2005) (“Words and phrases
shall be read in context and construed according to the rules of grammar and common
usage.”); Fleming Foods v. Rylander, 6 S.W.3d 278, 282 (Tex. 1999). Further, in
construing a statute, regardless of whether the statute is ambiguous, we may consider
the (1) object sought to be attained; (2) circumstances under which the statute was
enacted; (3) legislative history; (4) common law or former statutory provisions,
including laws on the same or similar subjects; (5) consequences of a particular
construction; (6) administrative construction of the statute; and (7) title (caption),
preamble, and emergency provision. Tex. Gov’t Code Ann. § 311.023 (Vernon
2005); see also Brown v. Owens, 674 S.W.2d 748, 750 (Tex. 1984) (in determining
legislative intent, “we must consider the entire Act, its nature and object, and the
consequences which follow from each construction.”).
          As respondents point out, section 9.005(b) concerns when an amendment to the
city charter becomes effective. A charter amendment “does not take effect until the
governing body of the municipality enters an order in the records . . .” Tex. Loc.
Gov’t Code Ann. § 9.005(b).
          If we were to accept the City’s argument that section 9.005(b) does not create
a mandatory duty on the part of the City Council, we would be providing a
mechanism by which a city council could effectively “veto” a voter-initiated and
adopted amendment simply by refusing to enter an order recognizing the
amendment’s adoption. This cannot have been the legislature’s intent. We will not
interpret section 9.005(b) in such a manner as to give the City Council the choice of
deciding when, or indeed if, a charter amendment that has been passed by a majority
of the voters becomes effective. The task of determining whether an amendment that
has been adopted by majority vote violates the city charter or other existing law
belongs, as it must in a three-branch government, to the courts (the judiciary)—not
the City Council (the legislative branch) or the Mayor (the executive branch).
          As stated in our discussion of the Mayor’s duty in section 9.007, the City’s
briefing indicates that it does not intend to enter an order declaring that proposition
2 has been adopted by the voters. As such, relators have shown a demand and a
refusal to perform.
          Accordingly, we conclude that section 9.005(b) imposes a nondiscretionary
duty for the City Council to enter an order in the city records declaring that all three
propositions passed by the city’s voters at the November 2, 1004 election have been
adopted. 
CONCLUSIONWe hold that section 6.007 of the Local Government Code imposes a
nondiscretionary duty on the Mayor to certify to the secretary of state an
authenticated copy of propositions 1, 2, and 3 under the City of Houston’s seal
showing their approval by the voters of the municipality. Accordingly, we grant the
requested relief in cause number 01-04-01276-CV. We are confident that the Mayor
will perform this duty as required. A writ of mandamus will issue to compel his
performance only if he has not complied within 30 days of the date of this opinion.
          We likewise hold that section 6.005(b) of the Local Government Code imposes
a nondiscretionary duty on the City Council to enter an order in the records of the
City of Houston declaring that propositions 1, 2, and 3 have been adopted. 
Accordingly, we grant the requested relief in cause number 01-05-00374-CV. We are
also confident that the City Council will perform this duty as required. A writ of
mandamus will issue to compel the City Council’s performance only if it has not
complied within 30 days of the date of this opinion.
 
 
 
 
 
          We express no opinion as to whether propositions 1 and 2 are inconsistent or
whether the language of the proposition 1 and the City Charter requires that
proposition 2 be declared invalid.
 

                                                             Sherry Radack
                                                             Chief Justice

Panel consists of Chief Justice Radack and Justices Nuchia and Higley.