

# IN THE
# TENTH COURT OF APPEALS

---

### No. 10-19-00399-CV

**NATIVE OILFIELD SERVICES, LLC,**

                                      **Appellant**

 **v.**

**TEXAS CHROME TRANSPORT, INC.,**
**HEADWATERS RESOURCES, INC.,**
**MJR TRUCK LINES, INC.,**
**AND WILLIAM "WILLIE" GRIFFIN,**

                                      **Appellees**

---

### From the 85th District Court
### Brazos County, Texas
### Trial Court No. 17-002182-CV-85

---

## MEMORANDUM OPINION

---

By one issue, appellant Native Oilfield Services, LLC ("Native"), challenges a summary judgment granted in favor of appellees, Texas Chrome Transport, Inc. ("TCT"), Headwaters Resources, Inc. ("Headwaters"), MJR Truck Lines, Inc. ("MJR"), and William "Willie" Griffin. Specifically, Native complains that the trial court erred by granting appellees' traditional summary judgment based on standing. We reverse and remand.

## Background

This case involves a commercial negligence claim among service providers in the oil and gas industry. On December 16, 2015, Native received a purchase order from C&J Energy Services, LLC, a contractor for Juneau Energy, LLC, to pick-up an order for "100 white mesh sand" from Superior Silica Sands, LLC ("Superior") and deliver the sand to two oil wells—the Arhopulis -Caldwell 1-H and the Arhopulis-Wade 1-H—operated by Juneau. Native contracted with TCT to pick-up, deliver, and off-load the sand to the wells. TCT hired MJR, who enlisted Griffin to pick up the sand and deliver it to the wells.

Rather than pick-up the sand from Superior's facility, Griffin went to Headwaters's place of business. Native asserted that Headwaters ignored the specifics of the purchase order and loaded Griffin's truck with 48,000 pounds of fly ash, rather than sand. Headwaters did not sell, supply, or carry "100 white mesh sand." Griffin transported and unloaded the fly ash into a silo of one of Juneau's wells that contained "100 white mesh sand." The fly ash contaminated the mesh sand and caused significant damage to the well, which severely impeded the operation of the well.

In response to this incident, Juneau sought indemnification from C&J for $1.1 million. C&J, in turn, sought indemnification from Native for the same amount. After making the indemnification demand, C&J withheld funds it owed Native on other invoices as an offset for the damages caused by the fly ash mis-delivery.

Shortly thereafter, C&J filed for bankruptcy. Native filed a proof of claim in C&J's bankruptcy proceeding in the amount of $1,160,841. On December 19, 2016, Native assigned its bankruptcy claim against C&J to Cherokee Debt Acquisition, LLC ("Cherokee") for $210,069.62.

Native then filed an original petition in this matter, alleging that each appellee was negligent in the mis-delivery of fly ash. Each of the appellees filed original answers denying the allegations made by Native in its original petition.

Headwaters filed traditional and no-evidence motions for summary judgment. In particular, in its traditional motion for summary judgment, Headwaters contended that Native lacked standing to sue in this matter because Native assigned its claims to Cherokee. TCT, MJR, and Griffin later joined Headwaters's motions for summary judgment. Native responded to the motions for summary judgment, and appellees filed a reply to Native's response.

After a hearing, the trial court granted appellees' traditional motion for summary judgment on the ground of standing. Native filed its notice of appeal, and this appeal followed.

### Standard of Review

A defendant can challenge the plaintiff's standing in a motion for summary judgment. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000) ("The absence of subject-matter jurisdiction may be raised by a plea to the jurisdiction, as well as by other

procedural vehicles, such as a motion for summary judgment." (internal citation omitted)).  Because standing implicates the trial court's jurisdiction, we review standing issues as we would a plea to the jurisdiction.  *Vernco Constr. Co. v. Nelson*, 460 S.W.3d 145, 149 (Tex. 2015) (per curiam) (citing *Brown v. Todd*, 53 S.W.3d 297, 3056 n.3 (Tex. 2001)). "A jurisdictional plea may challenge the pleadings, the existence of jurisdictional facts, or both."  *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018).  Here, appellees challenge Native's pleadings.  We therefore examine Native's pleadings to determine if there are facts alleged that affirmatively demonstrate Native's standing to bring each of its claims.  *See id.*  We construe the pleadings liberally in favor of jurisdiction, take all factual assertions as true, and look to the pleader's intent.  *Heckman v. Williamson County*, 369 S.W.3d 137, 150 (Tex. 2012); *see Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 503 (Tex. 2010) ("A court may presume the truth of allegations supportive of standing to determine standing and dispose of litigation through summary judgment.").  Whether the plaintiff's pleaded facts demonstrate standing is a question of law reviewed de novo. *Sneed v. Webre*, 465 S.W.3d 169, 180 (Tex. 2015).

## Analysis

In its sole issue on appeal, Native contends that the trial court erred by granting summary judgment in favor of appellees on the ground of standing.  In particular, Native argues that the assignment relied upon by the trial court only assigned its claims against C&J, not against appellees, and that Native retained its claims against appellees.

**APPLICABLE LAW**

Standing "focuses on whether a party has a sufficient relationship with the lawsuit so as to have a 'justiciable interest' in its outcome." *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005). "Standing is a threshold requirement to maintaining a lawsuit." *See Heckman*, 369 S.W.3d at 150 (citations omitted) ("Standing is a constitutional prerequisite to suit. A court has no jurisdiction over a claim made by a plaintiff who lacks standing to assert it."). The standing inquiry consists of three elements (1) the plaintiff must have personally suffered a "concrete and particularized . . . actual or imminent" injury, (2) that is fairly traceable to the challenged action of the defendant, and (3) there is a substantial likelihood the requested relief will remedy the alleged injury. *Meyers v. JDC/Firethorne, Ltd.*, 548 S.W.3d 477, 485 (Tex. 2018) (internal citations omitted). The plaintiff must allege a threatened or actual injury—it may not be hypothetical. *Farmers Tex. Co. Mut. Ins. Co. v. Beasley*, 598 S.W.3d 237, 241 (Tex. 2020) (citing *Allstate Indem. Co. v. Forth*, 204 S.W.3d 795, 796 (Tex. 2006) (per curiam)). Further, each party must establish standing to bring each of its claims, meaning courts assess standing "claim by claim." *Heckman*, 369 S.W.3d at 150.

"In determining whether a plaintiff has alleged a concrete injury sufficient to meet the standing requirement, courts look to the plaintiff's pleadings." *Beasley*, 598 S.W.3d at 241 (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993) (citations omitted) ("A review of only the pleadings to determine subject matter

jurisdiction is sufficient in the trial court because a litigant has a right to amend to attempt to cure pleading defects if jurisdictional facts are not alleged. Failing that, the suit is dismissed.")). "Because the standing determination is made by looking to the plaintiff's pleadings, the mere fact that a plaintiff may ultimately not prevail on the merits of the lawsuit does not deprive the plaintiff of standing." *Id.* (citing *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 305 (Tex. 2008) ("A plaintiff does not lack standing simply because he cannot prevail on the merits of his claim; he lacks standing because his claim of injury is too slight for a court to afford redress.")); *see Data Foundry, Inc. v. City of Austin*, 620 S.W.3d 692, 696 (Tex. 2021) (same).

**DISCUSSION**

In their traditional motion for summary judgment, appellees asserted that Native's assignment of its bankruptcy claim against C&J deprived Native of standing in this case. Specifically, appellees contended that:

> Plaintiff's own pleadings state that its claim for damages against Defendants flows directly from any amounts deducted or withheld by Juneau and C&J from Native's claim for work performed. . . . By selling its claim against C&J to Cherokee in December 2016, Plaintiff sold Cherokee the basis of its claim for damages against Defendants and relinquished any justiciable interest in the controversy against Defendants.

In its live pleading, Native alleged negligence claims against each appellee. In particular, Native's negligence claims were based on the following:

- TCT allegedly failed to provide adequate and clear instructions to Griffin, failed to hire/retain/train drivers capable of performing the tasks assigned, failed to obtain the correct material ordered by Native, failed to deliver the

correct material ordered by Native, failed to exercise due care in completing the assigned duties, and failed to advise Native and C&J that the fly ash had been substituted for the ordered white mesh sand.

- Headwaters allegedly issued a new purchase order to TCT/Griffin that did not comport with the purchase order provided by Native, failed to provide white mesh sand to TCT/Griffin as ordered in the purchase order provided to TCT/Griffin by Native, failed to exercise due care in the completion of the duties assigned to it, failed to advise Native and C&J that fly ash had been substituted for the ordered white mesh sand.

- Griffin allegedly failed to obtain the correct material ordered by Native, failed to deliver the correct material ordered by Native, failed to exercise due care in completing the duties assigned to him by Native, and failed to advise Native and C&J that fly ash had been substituted for the ordered white mesh sand.

- MJR allegedly failed to provide adequate and clear instructions to Griffin, failed to hire/retain/train drivers capable of performing tasks assigned to them, failed to obtain the correct material ordered by Native, failed to deliver the correct material ordered by Native, failed to exercise due care in the completion of the duties assigned to it by Native, and failed to advise Native and C&J that fly ash had been substituted for the ordered white mesh sand.

Based on these allegations, Native pleaded for damages for "[p]ecuniary loss sustained by Plaintiff [Native] in the past by way of amounts withheld by Juneau for the improperly delivered fly ash"; and "[p]ecuniary loss sustained by Plaintiff in the past and reasonably expected to be sustained the future by way of damage to Plaintiff's business resulting from the negligence of the Defendants."

Additionally, in its response to appellees' summary-judgment motions, Native included an affidavit executed by John Barclay, President of Native. In his affidavit, Barclay referenced Exhibit 3, which is C&J's letter demanding indemnification from

Native for the $1.1 million in losses suffered by Juneau as a result of the mis-delivery of fly ash. Barclay also described Native's damages to "include the amount of the fly ash load that was billed to Native, the cost of removing the fly ash from the silo containing sand, the cost of the sand already in the silo when it was contaminated with fly ash, and damage to the well as a result of using the fly ash in place of white sand." Exhibit 3, C&J's demand for indemnification from Native, was also attached to Native's response. The pleadings and evidence outlined above satisfy the three elements in the standing inquiry. *See Meyers*, 548 S.W.3d at 485.

However, despite the foregoing, appellees contend that Native is divested of any justiciable interest in the claims against appellees because, by operation of the assignment to Cherokee, Native no longer "owns" the claims. We disagree.

By its express language, the assignment covers the following:

> By this Assignment of Claim ("Assignment"), Seller ["Native"], its successors and assigns, for good and valuable consideration as set forth on Exhibit A hereto, . . . absolutely and unconditionally sells, transfers and assigns unto Buyer ["Cherokee"], its successors and assigns, all rights, title and interest in and to the claim(s) and any reclamation claim(s) as more fully defined below (the "Claim") of Seller against CJ HOLDING CO., ET AL. ("Debtor"), the debtor-in-possession in the Chapter 11 reorganization case, Case No. 16-33590 (the "Case"), in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"). . . . The Claim is defined as, without limitation, all of Seller's right, title and interest in and to: a) the Minimum Claim Amount (defined below); b) any amount in excess of the Minimum Claim Amount (defined below); and c) any Proof of Claim (defined below) if filed, or claims listed on the Schedule (defined below) if no proofs of claim have been filed. The Claim is defined to also include all agreements, instruments, invoices, purchase orders, proofs of delivery and other documents evidencing, or referred to in, such claim(s) of

the Proofs of Claim; all cure amounts paid by Debtor in connection with the assumption of contracts relating to such claim(s) or the Proofs of Claim; all rights to receive principal, interest, all rights of stoppage in transit, replevin and reclamation, fees, expenses, damages, penalties and other amounts in respect of or in connection with any of the foregoing, including, without limitation, all of Seller's rights to receive cash, securities, instruments and/or other property or distributions issued in connection with any of the foregoing or the Case.

Native then represented and warranted that the agreement covered the $1,160,841.50 proof of claim it filed in C&J's bankruptcy proceedings.

We conclude that the assignment does not divest Native of all personal stake in the controversy. *See River Consulting, Inc. v. Sullivan*, 848 S.W.2d 165, 169 (Tex. App.—Houston [1st Dist.] 1992, writ denied), *disapproved of on other grounds by Formosa Plastics Corp. USA v. Presidio Eng'grs & Contractors, Inc.*, 960 S.W.2d 41, 46 (Tex. 1998) (noting that, even in the instance of assignment, the assignor may still bring suit if it "has retained some right or interest" in the claim); *see also Vertical N. Am., Inc. v. Vopak Terminal Deer Park, Inc.*, 2017 Tex. App. LEXIS 8944, at **7-8 (Tex. App.—Houston [14th Dist.] Sept. 21, 2017, pet. denied) (holding that an entity that retained some interest in a claim, which purportedly has been sold to a third party, had standing to sue). The plain language of the assignment indicates that Native only assigned to Cherokee its claims against C&J, meaning Native is barred from suing C&J. However, the assignment does not mention appellees, nor does it assign Native's causes of action associated with this incident. As such, Native may still sue appellees. *See River Consulting, Inc.*, 848 S.W.2d at 169; *see also Comcast Corp. v. Houston Baseball Partners LLC*, No. 14-20-00043-CV, 2021 Tex. App. LEXIS

4800, at **14, 20-21 (Tex. App.—Houston [14th Dist.] June 17, 2021, pet. filed) (noting that "HBP has standing to assert the claims against appellants unless the record shows that HBP was completely divested of any justiciable interest" and concluding that HBP has standing to sue because, among other things, the assignment did not unequivocally transfer HBP's claims, and because HBP retained indemnity rights under the purchase and sale agreement); *Vertical N. Am., Inc.*, 2017 Tex. App. LEXIS 8944, at **7-8.

Because the assignment only transferred Native's claims against C&J and did not unequivocally transfer Native's claims against appellees, we hold that Native has standing to assert its claims against appellees. Accordingly, we conclude that the trial court erred by granting summary judgment in favor appellees on the basis of standing. We sustain Native's sole issue on appeal.

## Conclusion

Based on the foregoing, we reverse the judgment of the trial court and remand for proceedings consistent with this opinion.


MATT JOHNSON
Justice

Before Chief Justice Gray,
          Justice Johnson,
          and Visiting Justice Davis[1]
Reversed and remanded
Opinion delivered and filed August 31, 2021
[CV06]



---

[1] The Honorable Rex Davis, Senior Justice of the Tenth Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. §§ 74.003, 75.002, 75.003.